**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) |
| v. | ) Case No.: 3:19-CR-63 ) |
| ANTWAIN O. CARTER, | ) ) |
| Defendant. | ) ) |

**DEFENDANT'S POSITION ON SENTENCING**

The Defendant, Antwain O. Carter, through his attorney, Charles J. Homiller, Jr., hereby submits his position with respect to sentencing.

The Defendant concurs with the United States that the probation officer has properly calculated his sentencing guidelines range. Pursuant to the factors contained in 18. U.S.C. § 3553(a) and for the reasons set forth below, the Defendant asks the Court to sentence the Defendant to a period of incarceration not to exceed 100 months.

**I.    CASE BACKGROUND**

As indicated in the written and agreed upon Statement of Facts previously filed with the Court, on September 6, 2018, the Henrico County Police Department used a confidential informant to make contact with Mr. Carter for the purpose of buying illegal drugs. Mr. Carter sold less than a gram of heroin to the confidential informant for $120.00. There is no allegation or evidence presented that the Defendant possessed a firearm during the course of this transaction. Additional transactions occurred between Mr. Carter and the confidential informant over the next several weeks.

On November 14, 2018, direct indictments were filed in the Henrico Circuit Court alleging three counts of violating Virginia Code Section 18.2-248 for distribution of a controlled substance.  On November 20, 2018, when the Henrico Police executed an arrest and search warrant at 2004 Ingram Avenue in the City of Richmond, the house in which Mr. Carter was living, that they discovered firearms.  Mr. Carter was arrested the same day on the outstanding capias from the Henrico Circuit Court.  Upon being interviewed by Henrico Police, Mr. Carter acknowledged his involvement in the drug transactions and admitted to being in possession of the firearms discovered.  Mr. Carter was held without bond at the Henrico County Jail while his charges were pending in Henrico Circuit Court.  On April 9, 2019, the Henrico Commonwealth Attorney's Office requested to withdraw the three indictments against Mr. Carter via a motion to *nolle prosequi*.  Mr. Carter continued to be held in the Henrico County Jail until he was taken into custody by the U.S. Marshal Service on May 6, 2019.

On July 12, 2019, Mr. Carter pled guilty to Counts 1 and 2 of the Criminal Information, pursuant to a written Plea Agreement.  A presentence report was ordered by the Court, and sentencing was scheduled for October 10, 2019, later rescheduled for December 16, 2019.

## II.     MR. CARTER'S PERSONAL HISTORY

Mr. Carter was born on April 8, 1980, to his mother Jean Marie Simms Carter. Ms. Carter was the primary parental figure during Antwain's early years, as he did not have a stable father figure in his life.  At the age of 10, Mr. Carter and his family were evicted from their residence by the family of his recently deceased foster grandmother.

The family relocated from Charles City County to Highland Springs for a short period of time, but ultimately settled in the Fulton Hill area of the City of Richmond.

During this period of Mr. Carter's life, his mother was working 12 hour shift at Westvaco Corporation trying to make enough money to keep her family afloat.  Without adequate adult supervision, Mr. Carter soon found himself associating with negative peer influences.  By the time he was 12 years old, Mr. Carter had been exposed to and began using both alcohol and marijuana.  More significant than his personal use, Mr. Carter began selling drugs at the behest of older children and adults in his neighborhood.  This early entry into the drug trade led to his being charged at the age of 16 with felony drug distribution charges for which he was tried as an adult.  As a result of his drug use and criminal issues, Mr. Carter only made it through the seventh grade in school and to date has difficulty reading and writing.

With a felony criminal record, substance abuse problems and lack of education, finding and maintaining steady employment has been challenging for Mr. Carter. Many of the jobs he has been able to obtain have been temporary in nature, and the ones he has been able to procure with a chance of stability have been undermined in large part by his drug problem.  As the father of five children, Mr. Carter wants to be able to provide the needed financial support for them, but the problems he developed early on his life continue to frustrate his ability to do that.  Consequently, Mr. Carter found himself turning back to the low-level drug trade as a way of making money for his family.

Following his last period of incarceration, Mr. Carter attempted to take positive steps in addressing his substance abuse problem.  However, just slightly more than a month after his release Mr. Carter was told by The Counseling Center, LLC, that his

substance abuse assessment did not indicate the need for any treatment. Instead, he was referred to the Moral Recognition Therapy Program more than five months later. Mr. Carter was an active participant in that program all the way up to his arrest on November 20, 2018.

II. **POSITION ON SENTENCING**

The federal sentencing guidelines no longer hamstring a district court's discretion in sentencing as they are now considered merely advisory. *United States v. Booker,* 543 U.S. 220, 245-67 (2005). The Court now has the unfettered ability to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States,* 552 U.S. 38, 53 (2007) (quoting *Koon v. United States,* 518 U.S. 81 (1996)).

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. §3553(a)(2). To accomplish those goals, §3553(a) requires the sentencing court to factor in not only the advisory Guidelines range, but also the particular circumstances and facts of a specific case through the consideration of seven factors, the most pertinent of which are analyzed below. *See* 18 U.S.C. §3553(a)(1)-(7).

    A. **Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Mr. Carter acknowledges and appreciates the severity of his crimes. Nevertheless, there are important mitigating factors regarding his conduct that the Court should consider. As indicated in the agreed upon Statement of Facts, Mr. Carter sold small amounts of heroin to a confidential on four separate occasions, once in February

2018, and thrice in September 2018.  None of those individual sales involved an amount of controlled substance in excess of 5 grams.  Moreover, there is no evidence that Mr. Carter was in possession of a firearm during any of those transactions with the confidential informant.  Firearms were only found during a search warrant of his residence, not on his person.  Given the relatively minor amount of controlled substance per transaction, coupled with the absence of firearms during the transactions, clearly Mr. Carter was a low man on the proverbial totem pole in the Richmond area drug trade at the time of his arrest.

As indicated *supra*, Mr. Carter's childhood was dotted with turmoil, both self-imposed and outside of his control.  His family was evicted and forced to relocate multiple times when he was 10 years old.  He was waylaid by negative peers in the drug culture at age 12 and began consuming alcohol and smoking marijuana before he was a teenager.  That drug use evolved into selling drugs for older members of his community by the time he was 13 years old, which ultimately led to his first felony conviction at age 16.  In short, by the time Mr. Carter reached adulthood, he was a seventh grade educated, semi-literate convicted felon who was addicted to marijuana.  For the last twenty years, Mr. Carter has tried to navigate his way through society bearing the burden of those challenges.  Unfortunately, for a person like Mr. Carter who comes from that type of tumultuous background, it is easier to retreat to an illicit yet familiar life than it is to face failure while trying to live the straight and narrow.

The facts and circumstances of this case, as well as Mr. Carter's social history, bear out that he was not engaged in this behavior to actively harm anyone.  He reentered the drug trade out of necessity for himself, and he recognizes that there will be a penalty

to pay. However, there is nothing exacerbating about this situation to merit the court sentencing Carter to the high end of the guidelines range. Punishment should not exceed 100 months.

### B. A Sentence Not to Exceed 100 Months Serves the Factors of §3553

1. <u>Deterrence of Future Criminal Conduct and Protection of the Public</u>

At the expiration of a 100 months sentence, assuming no adjustments are made, Mr. Carter will be released just shy of his forty-seventh birthday. His minor son Tykee will be 18 years old, and his minor daughter Tilaya will be close to her 18th birthday. A sentence at or below the low end of the guidelines will still have the effect of Mr. Carter missing out on the majority of Tykee and Tilaya's childhood. The knowledge that he has put himself in a position not to be able to watch Tykee and Tilaya grow up is a punishment unto itself, and one that weighs heavily on Mr. Carter. Jean Marie Simms Carter, your defendant's mother, is now 63 years old and suffers from numerous medical conditions, most significantly heart disease and a history of multiple heart attacks. Prior to this incarceration, Mr. Carter provided significant assistance to his mother in helping her accomplish her daily needs. He knows that his behavior means that he will not be able to assist his mother for a lengthy period of time, which again weighs heavily on him as a consequence of his choices. Losing time with his family at this stage of his life will serve as a significant and personal deterrent to Mr. Carter in the future when he is ultimately released. There would be no additional deterrent effect for the court to sentence Mr. Carter at the high end of the guidelines that the low end will not already accomplish. Additionally, the public would not suffer any actual harm by the Court sentencing Mr. Carter at or below the low end of the guidelines range.

2. Need to Provide Needed Treatment to Defendant

It is apparent the Bureau of Prisons does not have then resources to offer Mr. Carter for his substance abuse issues, and if diagnosed, his mental health issues. Despite having been incarcerated for multiple years before his release in 2017, Mr. Carter received no treatment at any of the facilities where he was a resident. Even after his release from incarceration, Mr. Carter was told after being on probation for a month that he was not a candidate for additional treatment. It should be no surprise, then, that Mr. Carter began using illegal substances again after he was placed on probation. Mr. Carter needs an intensive substance abuse treatment program to address his long-standing history of drug use.

C. **OTHER FACTORS**

Mr. Carter may offer additional reasoning as to why he believes that the low end of the guidelines would be appropriate, but would prefer to address those issues with the Court at sentencing during a sidebar with counsel for the government.

III. **CONCLUSION**

For the reasons stated above, the Defendant submits that a sentence not to exceed 100 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. §3553(a).

> Respectfully submitted,
>
> **ANTWAIN O. CARTER**
>
> /s/ Charles J. Homiller, Jr.

Charles J. Homiller, Jr.
Virginia State Bar No. 51012
Homiller Law Firm
13801 Village Mill Drive
Suite 205
Midlothian, Virginia 23114
Phone: (804)608-5228
Facsimile: (804)299-5199
charles@homillerlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Stephen Anthony
>Assistant U.S. Attorney
>919 E. Main Street, Suite 1900
>Richmond, Virginia 23219

>/s/ Charles J. Homiller, Jr.
>Charles J. Homiller, Jr.
>Virginia State Bar No. 51012
>Homiller Law Firm
>13801 Village Mill Drive
>Suite 205
>Midlothian, Virginia 23114
>Phone: (804)608-5228
>Facsimile: (804)299-5199
>charles@homillerlawfirm.com